## Thelma WOOD

v.

## The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.

v.

## ATLANTIC ENTERPRISES.

Supreme Judicial Court of Maine.

Argued Nov. 8, 1982.

Decided Dec. 1, 1982.

Alan D. Graves (orally), Machias, for plaintiff.

Mitchell & Stearns, Samuel W. Lanham, Jr. (orally), Bangor, for Great Atlantic & Pacific Tea Co.

Rudman & Winchell, Edith A. Richardson (orally), Bangor, for Atlantic Enterprises, Inc.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS and VIOLETTE, JJ.

VIOLETTE, Justice.

Thelma Wood fractured her kneecap after stumbling over a defect in the parking lot of a store leased and operated by the Great Atlantic & Pacific Tea Company, Inc. (A&P) in Machias. She sued defendant/third-party plaintiff A&P for negligence and A&P brought a third-party complaint sounding in both negligence and contract against the lot's lessor, Atlantic Enterprises (Atlantic), seeking indemnification against any recovery by plaintiff Wood.

The jury returned verdicts against A&P in both actions and judgment was entered accordingly in Superior Court, Washington County, after which A&P moved for judgment notwithstanding the verdict with respect to the third-party action or for a new trial with respect to both actions. The motion was denied and A&P appeals from both the judgment and the denial of the motion.

On appeal, A&P contends that Atlantic was, as a matter of law, liable in tort for Wood's injuries[1] and obligated under its lease with A&P to indemnify A&P for all damages paid to Wood. A&P also argues that the jury verdicts against it were fatally inconsistent. We disagree and affirm the judgment.

## I. *Tort Duty*

■ The issue of A&P's liability to Wood was submitted to the jury as a question of negligence, while the issue of Atlantic's liability to A&P was submitted to the jury solely as a question of contract law. There is no evidence in the record that, in the third-party action, A&P requested that the case be submitted to the jury on a negligence theory. In addition, the presiding justice's instructions were expressly agreed to by A&P. A&P's failure to seasonably object to those instructions resulted in a waiver of its right to raise any such objections on appeal.[2] M.R.Civ.P. 51(b); Field, McKusick & Wroth, *Maine Civil Practice* § 51.2 (2d ed.1970 & Supp.1981); *see State v. Girard,* 283 A.2d 462, 463–64 (Me.1971).

## II. *Indemnity Clause*

■ A&P also argues that the jury erred in finding Atlantic not liable to A&P under a lease indemnity clause and that judgment notwithstanding the verdict or a new trial should thus have been ordered. The verdict, however, must stand unless, viewing the evidence in the light most favorable to Atlantic, it is manifestly wrong. *Quinn v. Moore,* 292 A.2d 846, 849 (Me. 1972); *Ogden v. Libby,* 159 Me., 485, 485–86, 195 A.2d 414, 414–15 (1963); Field, McKusick & Wroth, *supra* at § 50.4 (Supp. 1981). Our careful review of the evidence does not reveal any such error.

## III. *Inconsistent Verdicts*

The lease between A&P and Atlantic included a covenant by lessor Atlantic to make most repairs to the premises. According to the uncontested jury charge, Atlantic's duty to repair under that covenant arose only when Atlantic had notice of a condition requiring repair.

A&P contends that the jury verdict for Wood necessitated a finding that A&P had or should have had notice of the pavement defect over which Wood stumbled. A&P then argues that the evidence showing A&P's notice of the defect is so similar to the evidence introduced as to Atlantic's alleged notice that any rational jury, to reach consistent verdicts, must have concluded that Atlantic, too, had notice and thus breached its covenant to repair.

■ A new trial may be required when a jury returns two verdicts, each capable of standing on its own, which cannot rationally be viewed as consistent. *Guilford Yacht Club Association, Inc. v. Northeast Dredging, Inc.,* 438 A.2d 478, 481 (Me.1981). We must, however, "consider the evidence in light most favorable to the jury's verdicts and determine whether the verdicts are without rational explanation." *Id.* (citations omitted).

■ We find that there are several rational explanations for the jury verdicts. While there was evidence that A&P employees and the president of Atlantic both walked through the parking lot, such evidence did not require a finding that either any A&P employee or Atlantic's president, or both, had knowledge of the defect. On that evidence, the jury could rationally have concluded that A&P had notice of the defect in the parking lot and that Atlantic did not.

It is also possible that notice was not the determining factor in both verdicts. A&P owed Wood, a business invitee, a duty to maintain its premises so as to be reasonably

---

1. It is unclear whether the tort duty A&P seeks to impose on Atlantic runs to itself or directly to Wood. Our disposition of the case, however, does not require us to decide which interpretation was intended.

2. We may review the presiding justice's failure to give a tort instruction on the third-party claim only if it constituted "obvious error." *Knight v. Penobscot Bay Medical Center,* 420 A.2d 915, 919 (Me.1980). We find, and A&P does not argue otherwise, that no such obvious error was committed.

safe for customer use, while Atlantic owed A&P a contract duty to repair any defective conditions of which it had notice. The jury could rationally have concluded that A&P was negligent in failing to properly maintain the parking lot and that Atlantic did not breach its contract duty to A&P.

The entry is:

Judgment affirmed.

All concurring.